UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRUCE D. MOBLEY,

                   Petitioner,

     -vs-

ROBERT A. KIRKPATRICK,

                  Respondent.
_____

**DECISION AND ORDER**
**No. 09-CV-6525(VEB)**

## I.      Introduction

     Proceeding *pro se*, Bruce D. Mobley ("Mobley" or "Petitioner") has filed a petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his

conviction and custody after a jury verdict in New York State Supreme Court (Erie County), on

charges of assault in the first degree (New York Penal Law ("P.L.") § 120.10(1)), criminal

possession of a weapon in the second degree (former P.L. § 265.03(2)) and criminal possession

of a weapon in the third degree (former P.L. § 265.02(4)).

     In his petition, Mobley raises the following grounds for relief: (1) the trial court's

suppression ruling was incorrect; (2) the testimony of Detective Beltz and Officer Dragone was

improperly admitted at trial; (3) the trial court abused its discretion in denying the defense

request for a missing witness charge; (4) the verdict is against the weight of the credible

evidence; and (5) trial counsel failed to provide constitutionally effective assistance.

     Respondent answered the petition, interposing the affirmative defense to certain of

Mobley's claims and arguing that they all are, in any event, without merit or not cognizable on

habeas review. (Docket Nos. 6 & 7). Petitioner filed a memorandum of law in reply to

Respondent's answer and opposition. (Docket No. 12).

The parties have consented to final disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

For the reasons that follow, the petition is dismissed.

## II.     Standard of Review Under 28 U.S.C. § 2254, as Amended by AEDPA

When a petitioner "in custody pursuant to the judgment of a State court" seeks habeas review of "any claim that was adjudicated on the merits in State court," a habeas writ may issue only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). A state court decision is "contrary to" federal law as determined by the Supreme Court if either (a) "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law," or (b) "the state court considers facts that are materially indistinguishable from a relevant Supreme Court case and arrives at an opposite result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).  An "unreasonable application" of clearly established federal law occurs if (a) "'the state court identifies the correct governing legal rules from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,'" or (b) the "state court invokes a Supreme Court case and unreasonably extends its legal principle to a new context where it should not apply, or fails to extend it where it should apply." *Williams*, 529 U.S. at 407.

Factual findings by a state court are entitled to a presumption of correctness, 28 U.S.C. §

2254(e)(1), which the habeas applicant bears the burden of overcoming by clear and convincing evidence, *id.*

## III.    The Adequate and Independent State Ground Doctrine and Procedural Default

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citations and internal quotations omitted). Even where the state court also considers a petitioner's arguments on the merits, that is of no moment because "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas." *Harris*, 489 U.S. at 264 n. 10; *accord Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir.2000); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

To show a "fundamental miscarriage of justice" requires a demonstration of "actual innocence." *See*, *e.g.*, *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d

728 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) ("The miscarriage of justice exception is concerned with actual as compared to legal innocence."). The Supreme Court has emphasized that the exception has a "narrow scope," *Sawyer*, 505 U.S. at 339.  "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial[,]" *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *accord Calderon*, 505 U.S. at 339.

IV.     **Analysis of the Petition**

    A.     **Ground One: Petitioner's Statement Should Have Been Suppressed Under the "Fruit of the Poisonous Tree" Doctrine**

Mobley contends that his oral statement should have been suppressed as the product of an illegal arrest. The testimony of Detective James Reese ("Det. Reese") at the *Huntley* hearing revealed that while on patrol on December 21, 2002, at 8:45 a.m. in the vicinity of Goodyear and Sycamore streets, he observed Petitioner leave a deli and enter the passenger side of a car parked nearby. Det. Reese recognized petitioner from prior contact and also from a photograph of petitioner he had with him. Additionally, the Major Case Unit of the Buffalo Police Department had distributed a flyer with Petitioner's photograph and instructions to apprehend him because he had been identified in a shooting that had occurred at 78 Gibson Street.

Det. Reese activated his lights and pulled the car over. While his partner approached Petitioner's side of the car, Det. Reese went to ask the driver his name. When Det. Reese overheard Petitioner falsely respond that his name was Donald Williams, Det. Reese went to the passenger's side and asked Petitioner to get out of the car. In response to Det. Reese's inquiry for his name, Petitioner insisted that it was "Donald Williams." It was not until Det. Reese told him

that he knew Petitioner's name was "Bruce" that petitioner admitted his name was "Bruce Mobley."

After arresting Mobley, Det. Reese advised him of his *Miranda* warnings and transported him to police headquarters. Det. Reese recalled that during his encounter with Petitioner, no guns were drawn and Petitioner was not handcuffed.

Det. Reese admitted that there had been no outstanding arrest warrant for Petitioner on December 21, 2002. He recalled that he had reviewed the file which contained statements about the Gibson Street shooting and a photo array, and was aware from his review of the file that Petitioner had been accused of shooting George Doran in front of 78 Gibson Street a few weeks earlier.

In a Decision and Order dated May 29, 2003, the trial court denied suppression of Petitioner's statement on the ground that it was not the product of a custodial interrogation, and that there was probable cause for Petitioner's arrest.[1]

On direct appeal, Mobley argued that his statement should have been suppressed because his arrest was made without probable cause, contrary to the finding of the suppression court. The Appellate Division held that "inasmuch as he failed to request a probable cause hearing or to

---

[1]     Respondent explains that under New York law, there is a doctrine called the "fellow officer rule." *People v. Jennings*, 54 N.Y.2d 518, 522 (N.Y. 1981) (quoting *Whitley v. Warden*, 401 U.S. 560 (1971); *People v. Parris*, 83 N.Y.2d 342 (1994). Under the "fellow officer rule," a police officer can make a lawful arrest even without personal knowledge sufficient to establish probable cause, so long as the officer is acting upon the direction of or as a result of communication with a fellow officer in possession of information sufficient to constitute probable cause to make the arrest. *E.g., People v. Ramirez-Portoreal*, 88 N.Y.2d 99 (N.Y. 1996). New York courts have held that information received from another police officer is presumptively reliable. In the instant case, Det. Reese relied on the information contained in the Buffalo Police Department's Major Case file for the facts giving rise to probable cause to arrest petitioner. The file contained a photograph of Petitioner, witnesses' statements about the Gibson Street shooting, a photo array, and information indicating that Petitioner had been identified as the shooter. Thus, as a matter of New York law and the "fellow officer rule", Det. Reese had a sufficient basis to establish that there was probable cause for Petitioner's arrest.

raise that contention at the *Huntley* hearing," he "failed to preserve [that contention] for [the court's] review. . . ." *People v. Mobley*, (citing *People v Barton*, 13 A.D.3d 721, 723 (2004); *People v. Purcelle*, 282 A.D.2d 824, 824-825 (2001)).

Respondent argues that the claim is procedurally defaulted due to the Appellate Division's reliance upon an adequate and independent state ground to dismiss it. Petitioner appears to argue that even if the claim is procedurally defaulted, the ineffectiveness of his trial counsel in failing to request a probable cause hearing constitutes "cause" to excuse the procedural default.

Respondent also argues that because the claim asserts a Fourth Amendment violation, it is barred from habeas review because Petitioner had a full and fair opportunity to litigate the claim in state court. Petitioner appears to be arguing that there was an "unconscionable breakdown" in the state's corrective process and that he was denied an "opportunity" to litigate the claim because trial counsel was ineffective.

Here, the claim may be easily disposed of because it asserts a Fourth Amendment claim precluded under the doctrine of *Stone v. Powell,* 428 U.S. 465 (1976), and thus there is no need to resolve the procedural default issue.

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481-82. (emphasis added). In *Gates v. Henderson*, 568 F.2d 830 (2d Cir.1977) (*en banc*), *cert. denied*, 434 U.S. 1038 (1978)), the Second Circuit developed a "litmus test" for determining when a

petitioner has denied an "opportunity" for a "full and fair litigation of his fourth amendment claims." *Gates*, 568 F.3d at 839, 840; *accord Capellan v. Riley*, 975 F.2d 67, 69-71 (2d Cir.1992); *see also McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67, 70 (2d Cir.1983). The Second Circuit concluded, in light of the Supreme Court's holding in *Powell* that the state is only required provide the "opportunity"to the state prisoner for a full and fair litigation of the Fourth Amendment claim.

Review of Fourth Amendment claims presented by habeas petitioners would be undertaken in only one of two instances, explained the Second Circuit.  First, habeas review of Fourth Amendment claims would be warranted "if the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations."  *Capellan*, 975 F.2d at (quoting *Gates*, 568 F.2d at 840 and citing *McPhail*, 707 F.2d at 70). Second, "if the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an 'unconscionable breakdown in the underlying process,'" the habeas court should undertake habeas review. *Id.* (quoting *Gates*, 568 F.2d at 840); *accord Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]").

Notably, all that must be shown is that the State has provided an opportunity to litigate the petitioner's Fourth Amendment claim; it matters not whether the petitioner actually "took

advantage of the State's procedure." *Graham*, 299 F.3d at 134. Mobley does not, and cannot contend that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claim.  This is because he took advantage of the opportunity to challenge the legality of his arrest by means of New York's procedure for litigating Fourth Amendment claims, embodied in New York Criminal Procedure Law § 710.10 *et seq.*, which has been held by federal courts in New York to be "'facially adequate.'" *Capellan*, 975 F.2d at 70 n. 1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing *Gates*, 568 F.2d at 837 & n. 4; *Shaw v. Scully*, 654 F.Supp. 859, 864 (S.D.N.Y. 1987)). Although Mobley did not specifically assert the argument that the statement should have been suppressed as being the product of an arrest without probable cause, the suppression court specifically adjudicated the underlying issue of whether there was probable cause for his arrest.

To the extent that Mobley is asserting that the state courts erroneously decided his motion to suppress, he essentially is asking this Court to conduct a *de novo* factual review of his claims. The relief requested, however, is expressly forbidden by the *Stone v. Powell* doctrine, as the Second Circuit has explained many times: A petitioner's mere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an "unconscionable breakdown" occurred in the existing process in violation of the  petitioner's Fourth Amendment rights under the Constitution. *Capellan*, 975 F.2d at 71 ("[T]o the extent that [petitioner] claims that the Appellate Division erred in its ruling . . . , this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is *not the equivalent* of an unconscionable breakdown in the state's corrective process.") (emphasis supplied); *Gates v. Henderson*, 568 F.2d at 840 ("*Stone v. Powell* . . . holds that we have no authority to review the

state record and grant the writ simply because we disagree with the result reached by the state courts.").

The Second Circuit has explicitly rejected the possibility of interpreting *Stone v. Powell* to require the reviewing court to focus on the correctness of the state court's corrective procedures for adjudicating Fourth Amendment claims, rather than on the existence and application of the corrective procedures themselves. According to the Second Circuit, to subject a habeas petitioner's previously litigated Fourth Amendment claims to further federal review would be to assume, "implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." *Capellan*, 975 F.2d at 71. *Stone v. Powell*, however, "expressly discouraged" it from making such an assumption. *Id.* (citing *Powell*, 428 U.S. at 493-94 n. 35) ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States."). To the extent Mobley contends that he is entitled to further review of his claims because the trial court's allegedly erroneous fact-finding, incorrect application of the law, and refusal to consider the pertinent issues during the suppression hearing, constituted an "unconscionable breakdown" in state process, the Court disagrees, given the circumstances presented here.

Although the Second Circuit has not defined precisely when an unconscionable breakdown has occurred, it observed in *Capellan* that its citations in *Gates v. Henderson* to *Frank v. Mangum*, 237 U.S. 309 (1915),[2] and to Paul M. Bator, *Finality in Criminal Law and*

---

[2]     In *Frank v. Magnum,* the Supreme Court affirmed the denial of a petition for a writ of habeas corpus despite the petitioner's contention that his murder trial was dominated by an angry mob. *See* 237 U.S. at 324. Because the state forum had provided adequate procedures to remedy these alleged due process violations, however,

*Federal Habeas Corpus for State Prisoners*, 76 HARV. L. REV. 441 (1963), "illustrate the sort of 'disruption or obstruction of a state proceeding' typifying an unconscionable breakdown." *Capellan*, 975 F.2d at 70 (citing *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y.1987); *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988) (*per curiam*)). As the district court pointedly observed in *Cappiello v. Hoke*, "an unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." 698 F. Supp. at 1050.

Clearly, then, a petitioner's mere disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72; *accord, e.g.*, *Watkins v. Perez*, No. 05 Civ. 477(GEL), 2007 WL 1344163, *23 (S.D.N.Y. May 30, 2007) (holding that without more, rejection by state appellate court of petitioner's Fourth Amendment claims, is not an "conscionable breakdown" in the state's corrective process; noting that a "habeas court cannot grant relief simply because it may disagree with the state court's resolution of the claim"); *Woods v. Kuhlmann*, 677 F. Supp. 1302, 1306 (S.D.N.Y. 1988) ("The doctrine of *Stone v. Powell*, however, forbids *de novo* review of state court fact-finding on a Fourth Amendment issue particularly where, as here, the petitioner can claim only that the issue was wrongly decided."); *Huntley v. Superintendent*, No. 9:00CV191, 2007 WL 319846, at *8 (N.D.N.Y. Jan. 30, 2007); *Gonzalez v. Superintendent, Sullivan Corr. Fac.*, 761 F. Supp. 973, *977 (E.D.N.Y. 1991) (state court denied habeas

---

due process had not been denied, and federal collateral review was unwarranted. *Id.* at 335-36.

petitioner's request for a probable cause hearing because petitioner did not advance sufficient sworn allegations in his motion papers; district court held that denial of probable cause hearing was not an "unconscionable breakdown" in the process afforded by the state; petitioner was provided with a full and fair opportunity to litigate his fourth amendment claim in the state courts; "[t]he fact that petitioner was denied his request for such a hearing does not, in and of itself, affect the legitimacy of the state process") .

In the present case, the Court cannot find evidence of an "unconscionable breakdown" of the Fourth Amendment process afforded him. Federal habeas review of Mobley's Fourth Amendment claim regarding the stop of his vehicle and subsequent arrest, and search and seizure, is unavailable under the doctrine of *Stone v. Powell*, *supra*. Accordingly, this claim must be dismissed.

**B.      Ground Two: Erroneous Admission of Hearsay Testimony**

Petitioner argues that the court erred in admitting hearsay testimony from two police officers at trial. Specifically, he claims that the testimony of Detective Beltz to the effect that during her investigation, "she came up with the name of a suspect", was inferential hearsay based on information she received from others. Petitioner also argues that Officer Dragone's testimony concerning her conversation with the victim, George Doran ("Doran"), in the ambulance *en route* to the hospital was improperly admitted hearsay.

**1.      Detective Beltz's Testimony**

Respondent argues that Petitioner's challenge to the testimony of Detective Beltz is procedurally defaulted due to his failure to have made a specific objection directed at the nature of the testimony. On direct appeal, the Appellate Division held as follows:

Because defendant made only a general objection to the testimony of a police officer that there was "a point in time in [her] investigation when [she] came up with the name of a suspect" and that the name of the suspect was that of defendant, he also failed to preserve for our review his contention that such testimony constituted inadmissible inferential hearsay (*see People v Piper*, 21 AD3d 816 (2005), *lv denied* 5 NY3d 884 (2005); *People v Pierre*, 300 AD2d 1070 (2002), *lv denied* 99 NY2d 631(2003)),

*People v. Mobley*, 49 A.D.3d 1343, *1344, 2008 N.Y. Slip Op. 02663)

Under New York law, in order to preserve an issue for appeal, a contemporaneous, specific objection must be lodged at trial, and if the objection is not sustained, the objecting party must seek further relief, such as seeking to have a mistrial declared. *See* N.Y. CRIM. PROC. LAW § 470.05(2); *see also, e.g., People v. Rogers*, 281 A.D.2d 240, 241, 721 N.Y.S.2d 533, 533 (1st Dept. 2001) ("By failing to object, by making general objections, or by failing to request any further relief after objections were sustained, defendant failed to preserve her contentions."); *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007) ("[A] defendant must make his or her position known to the court. The purpose of this rule is to apprise the trial judge and the prosecutor of the nature and scope of the matter defendant contests, so that it may be dealt with at that time. A general objection is not sufficient to preserve an issue.") (internal citations omitted); *Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007) (same).

At trial, defense counsel did not object on the specific grounds that Det. Beltz's testimony constituted inadmissible inferential hearsay. The Appellate Division's holding denying the claim explicitly relied upon defense counsel's failure to made a sufficiently specific objection. The Appellate Division also declined to exercise its "interests of justice" discretionary authority to look past the procedural bar and review the claim. Under the circumstances, it is clear that the Appellate Division denied Petitioner's claim on an independent state procedural ground.

-12-

The adequacy of state procedural bars to the assertion of federal questions is itself a federal question that the habeas court must decide. *See Walker v. Martin*, 131 S. Ct. 1120, 1130 (2011); *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002); *Douglas v. Alabama*, 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934 (1965)). As a matter of federal law, "[a] claimed procedural bar is adequate only if state courts have applied the rule 'evenhandedly to all similar claims.'" *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (quoting *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir.2003)); *accord Walker*, 131 S. Ct. at 1130. However, "even though a rule generally might be considered firmly established and regularly followed, considered in the specific circumstances of a case, it still might be inadequate to preclude federal review, if its application would be 'exorbitant,' that is to say, an arid 'ritual . . . [that] would further no perceivable state interest.'" *Richardson*, 497 F.3d at 218 (internal citations omitted) (alteration in original) (quoting *Lee,* 534 U.S. at 366).

When engaging in an adequacy analysis, federal courts should look to state court decisions to determine if there is a "fair or substantial basis" for the application of the state law to the particular case. *Garcia v. Lewis*, 188 F.3d 71, 78 (2d Cir.1999). "[T]he question is whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." *Cotto*, 331 F.3d at 240 (citing *Lee*, 534 U.S. at 386-87).

In the *Cotto* and *Garvey* cases, the Second Circuit examined the guidelines a habeas court should use to determine the adequacy of a claimed state procedural bar:  (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with

the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.  *Garvey*, 485 F.3d at 714 (quoting *Cotto*, 331 F.3d at 240). While the factors "are not a test for determining adequacy, they are nonetheless used as guides in evaluating 'the state interest in a procedural rule against the circumstances of a particular case.'" *Garvey*, 485 F.3d at 714 (quoting *Lee*, 534 U.S. at 386-87).

   After examining New York's preservation doctrine, the *Garvey* court observed, "[In New York, a] general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position. . . .  Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant[s] must specifically focus on the alleged error." 485 F.3d at 714 (citing *People v. Gray*, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 175, 652 N.E.2d 919 (1995)). *Garvey* noted that even if there is only a general objection, when a trial court nonetheless expressly decides an issue, that also preserves the issue for appeal. 485 F.3d at 717; *cf. People v. Turriacgo*, 90 N.Y.2d 77, 83-84, 659 N.Y.S.2d 183, 186, 681 N.E.2d 350 (1997) (holding that an issue was not preserved for appeal when a lower court's observations about a related issue did not amount to an express decision on the issue in question), *rearg. denied*, 90 N.Y.2d 936, 664 N.Y.S.2d 274, 686 N.E.2d 1369 (1997). Thus, under New York law, if a defendant specifically raises an issue at trial, or if, absent a specific objection, the trial court nonetheless expressly decides the specific issue in response to a general objection, the issue is preserved for appeal. *See* N.Y. Crim. Proc. Law § 470.05(2); *see also People v. Nieves* 90

-14-

N.Y.2d 426, 431 n. *, 660 N.Y.S.2d 858, 861 n. * (1997) (holding issue was preserved despite general objection because the trial court specifically ruled on the issue); *accord Garvey*, 485 F.3d at 717.

First, assessing the state court's reliance on Petitioner's procedural violation–failing to specifically object contemporaneously–sometimes is not helpful in the context of C.P.L. § 470.05(2). As the court in *Cotto* observed, "the lack of a . . . [specific] objection would not, almost by definition, be mentioned by the trial court." 331 F.3d at 242. Similarly, the other aspect of the first factor, whether perfect compliance with the rule would have changed the outcome, is less relevant in evaluating the failure to preserve a claim because the likely impact of a contemporaneous objection involves a certain degree of speculation as to how the trial judge would have ruled. *Cotto*, 331 F.3d at 242-43.

Second, New York precedent clearly indicates that defendants must comply with the rule in the context of objections made to preserve a claim of error for appellate review. With the exception of fundamental "mode of proceedings" errors, this rule is applicable to both constitutional and non-constitutional claims. *People v. Patterson*, 39 N.Y.2d 288, 294-97, 383 N.Y.S.2d 573, 576-578, 347 N.E.2d 898 (1976), *aff'd*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In addition, an objection must be "specifically directed at the alleged error." *Gray*, 86 N.Y.2d at 19, 629 N.Y.S.2d at 175, 652 N.E.2d 919 (internal quotation marks omitted). If a defendant offers one basis for an objection at trial, he cannot rely on a different ground to argue on appeal that he was improperly denied the requested relief. *See People v. Kello*, 96 N.Y.2d 740, 743-44, 723 N.Y.S.2d 111, 113, 746 N.E.2d 166 (2001) (holding that defendant's objection made on the basis of a trial evidence error is distinct from a Confrontation Clause objection and, thus, a

hearsay objection is not sufficient to preserve constitutional claims); *Rogers*, 281 A.D.2d at 241, 721 N.Y.S.2d at 533 ("[B]y making general objections . . . defendant failed to preserve her contentions."); *Garvey*, 485 F.3d at 714 ("A general objection is not sufficient to preserve an issue . . . .") (internal citations omitted). Here, by making only a general objection to Det. Beltz's testimony, Mobley failed to preserve his contention that it should not have been admitted because it constituted inferential hearsay.

As for the third factor, Mobley did not substantially comply with the rule's requirements, because his attorney failed to specifically object on grounds of inferential hearsay. Moreover, there was no objection lodged after the court issued its ruling, and no request for a mistrial. Thus, it is clear that Petitioner did not comply with New York's contemporaneous, specific objection rule. Applying the three factors discussed in *Cotto* and *Garvey*, the Court is satisfied as to the adequacy of the state procedural bar relied upon by the Appellate Division in Mobley's case. Accordingly, the Court concludes that Petitioner's claim that improper inferential hearsay was admitted at trial is procedurally defaulted under the independent and adequate state procedural doctrine.

If a state court judgment is based on an independent and adequate state procedural rule, federal courts generally cannot review the state court judgment in a habeas corpus proceeding unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Jimenez v. Walker,* 458 F.3d 130, 149 (2d Cir.2006); *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).  The cause and prejudice requirement is phrased in the conjunctive,

so the petitioner must also establish prejudice by demonstrating that there is a "reasonable probability" that, but for the alleged constitutional violation that is the subject of the defaulted claim, the outcome. *See Strickler v. Greene*, 527 U.S. 263, 289 (1999); *McClesky*, 499 U.S. at 494. Failure to make a showing on either cause or prejudice defeats the petitioner's ability to overcome the procedural default on this basis. *See McCleskey*, 499 U.S. at 502; *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir.1985). Petitioner has not argued or demonstrated "cause"[3] for his procedural default; therefore, the Court need not consider the issue of prejudice.

In the alternative, a claim that is barred from habeas review pursuant to independent and adequate state grounds can be considered if a petitioner demonstrates that failure to consider it would result in a miscarriage of justice. A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *see also Bousley v. United States*, 523 U.S. 614, 623 (1998). There is nothing in the record to suggest that such exceptional circumstances are present here. Because Petitioner cannot overcome the procedural default by demonstrating that a miscarriage of justice will result if his evidentiary claim is not heard, the claim is barred from further review.

### 2.    Officer's Dragone's Testimony

Petitioner contends that the testimony of Officer Dragone regarding the victim's statements was improperly admitted as the excited utterance exception to the hearsay rule.

---

[3]        Although ineffective assistance of counsel can constitute "cause," trial counsel's ineffectiveness for failing to object to Det. Beltz's testimony on the basis that it was inadmissible inferential hearsay is not a claim that Petitioner has exhausted and established. Therefore, ineffective assistance cannot serve as cause for Petitioner's procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 452, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000) ("'A claim of ineffective assistance' . . . generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'") (quoting *Murray v. Carrie*r, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

During the testimony of Officer Dragone, the prosecutor attempted to elicit the content of the conversation she had with the victim, Doran, while in the ambulance en route to the hospital. Officer Dragone's testimony that the victim answered "yes" in response to her question of whether he saw or knew who shot him, elicited an objection from counsel. The objection was sustained even after the prosecutor argued that the testimony was an excited utterance and should be admitted under that an exception to the hearsay rule.

Later during the trial the prosecutor recalled Officer Dragone to testify. The trial court explained that it was reversing its earlier ruling and was allowing admission of the testimony as an excited utterance in reliance on *People v. Brooks*, 71 N.Y.2d 877 (N.Y. 1988) and *People v. Edwards*, 47 N.Y.2d 493 (N.Y. 1979).

Officer Dragone proceeded to testify that she was on patrol near William Street on December 9th at 9:33 a.m. when she received a call regarding a shooting at Fillmore and Peckham Streets. Upon her arrival at the scene three minutes later, she saw a "black male laying [sic] in the street off to the side holding his back area." Officer Dragone observed blood on the ground underneath the victim and a bullet hole in the back of his jacket from which blood was flowing. The victim appeared to Officer Dragone to be "in distress and extreme pain" as she called for an ambulance. When emergency assistance arrived five minutes later, Officer Dragone–on orders from her supervisor–entered the ambulance. The victim, who was being treated by paramedics, "hyperventilating, nervous and scared." While they were still at the scene Officer Dragone asked the victim his name, where he lived, and his date of birth. In response to her question as to whether he knew what had happened or had seen who shot him, Doran replied, "LA." Dragone asked him "who L.A. was he said, he's L.A., that's his nickname, he lives at 78 Gibson." T.155.

Doran provided a description of the shooter as being a  "[a]bout six two, brown skin, black

male." T.155.

On direct appeal, the Appellate Division held as follows with regard to the claim that

Officer Dragone's testimony was improperly admitted:

> We reject defendant's further contention that the victim's statement to a police
> officer while in an ambulance en route to the hospital after the shooting
> constituted inadmissible hearsay. The victim was still suffering from the pain and
> shock of the shooting when he made the statement, and he testified that he did not
> remember talking to the police and that he believed that he was going to die. We
> thus conclude that the statement was "not made under the impetus of studied
> reflection" and falls within the excited utterance exception to the hearsay rule[.]"
> *People v Edwards*, 47 NY2d 493, 497 (1979); *see People v Johnson*, 1 NY3d 302,
> 306 (2003); *People v Cotto*, 92 NY2d 68, 78-79 (1998)).

*People v. Mobley*, 49 A.D.3d at 1344.

Federal habeas relief does not lie for mere errors of state law, and it is well established

"that it is not the province of a federal habeas court to reexamine state-court determinations on

state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 71-72 (1991) (citations omitted).

Claims of evidentiary error are cognizable only if the challenged holdings rendered the trial

fundamentally unfair. *Id.* at 75. *See also Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir.1988)

(holding that writ of habeas will issue only where an evidentiary holding deprived Petitioner of a

fundamentally fair trial). Specifically, "[t]he erroneous admission of evidence rises to a

deprivation of due process under the Fourteenth Amendment only if the evidence in question

'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that

would have existed on the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir.1992)

(quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985)).

Here, the state courts correctly applied New York's "excited utterance" exception to the

rule against hearsay to admit Officer Dragone's testimony concerning Doran's statements to her in the ambulance.  The "introduction of a spontaneous declaration or excited utterance made contemporaneously or immediately after a startling event which asserts the circumstances of that occasion as observed by the declarant" is one of the better known exceptions to the rule against hearsay. *People v. Edwards*,  47 N.Y.2d at 497 (citations omitted). Underlying the "excited utterance" exception "is the assumption that a person under the influence of the excitement precipitated by an external startling event will lack the reflective capacity essential for fabrication and, accordingly, any utterance he makes will be spontaneous and trustworthy[.]" *Id.* (citations omitted).  The trial court is charged with assessing "not only the nature of the startling event and the amount of time which has elapsed between the occurrence and the statement, but also the activities of the declarant in the interim to ascertain if there was significant opportunity to deviate from the truth." *Id.* The "decisive factor" in the inquiry "is whether the surrounding circumstances reasonably justify the conclusion that the remarks were not made under the impetus of studied reflection." *Id.*

Here, Doran had, only minutes before talking to Officer Dragone, experienced a shocking event–he been severely wounded as a result of being shot in the back and arm. Despite the fact that he remained conscious, he was in emotional distress and experiencing extreme pain. Doran testified that on a scale of 1 to 10, the pain was a "10 ", and that stated, "I thought my arm fell off. I felt another one in my back, too. I hit the ground."[4]

---

[4]        After he was shot, Doran looked behind him and saw a black African-American male wearing all black standing on the corner of Gibson and Peckham streets. This man, whom he recognized as "L.A." (i.e., Mobley), was holding a black gun. Doran often had seen Mobley driving around the neighborhood in the particular gray, rag-top Oldsmobile in which the shooter and his girlfriend were sitting; he did not know whose car it was, but he always saw Mobley driving that car. Doran also knew that Mobley lived at the bottom apartment of 78 Gibson Street, and that Doran had seen him twice over a "couple months" when Doran was visiting people at the upstairs

Although he was able to call 911 and his mother, he did not remember talking to Officer

Dragone or being transported in the ambulance, explaining that he "felt tired, like he was trying

to go to sleep."  The extraordinary stress that Doran was experiencing as a result of being shot

prevented him from engaging in reflection and gave his statements the necessary indicia of

reliability. That Doran was able to call his mother and emergency services does not undermine

the finding that he was still experiencing the shock and distress of having been shot and seriously

injured at the time he identified Mobley as the shooter to Officer Dragone. *See People v. Cotto*,

92 N.Y.2d 68, 79 (N.Y. 1998) ("Here, as found by the trial court and affirmed by the Appellate

Division, the victim was severely wounded by a gunshot from close range and attempted to

escape additional shots fired at him by defendant. The victim's injuries were severe enough that

he had no discernible blood pressure on his trip to the hospital, leading the attending EMT to

conclude that he was going into shock and could die. Although the victim remained lucid for

much of his trip in the ambulance, he was in great pain, his condition only worsened and his

physical shock and trauma never subsided. It is this extraordinary stress that prevented [the

victim] from engaging in reflection and gives his statements the necessary indicia of reliability.

Neither the short interval between the shooting and the statements, nor the fact that the

statements were made in response to questioning was sufficient to interrupt the excitement of the

shooting and consequent injuries. Thus, we cannot say that the trial court erred as a matter of law

in admitting the victim's statements.") (footnote omitted; internal citations omitted); *People v.*

*Medina*,  53 A.D.3d 1046, 1047, 861 N.Y.S.2d 546, 547 (App. Div. 4th Dept. 2008) ("Contrary to

defendant's contention, the one-word responses of the victim to questioning from a friend

---

apartment.

concerning who shot him were properly admitted under the excited utterance exception to the hearsay rule inasmuch as the victim's responses, identifying defendant as the shooter, were 'not made under the impetus of studied reflection'.  The record establishes that the friend questioned the victim while attempting to comfort him, approximately five minutes after the victim had been fatally wounded and was in obvious pain, and we thus conclude that the responses were made while the victim was 'under the continuing influence of the stress and excitement generated by the initial event[.]'") (quotations omitted).

### C.       Ground Three: Erroneous Denial of a Missing Witness Jury Instruction

Mobley argues that the trial court erred in refusing to give a missing witness charge with respect to the two individuals who were with the victim at the time of the shooting. On direct appeal, the Appellate Division rejected the claim as unpreserved and without merit:

> Defendant raised that contention for the first time after the close of evidence and the charge conference, and defendant thus failed to act "as soon as practicable so that the court [could] appropriately exercise its discretion and the parties [could] tailor their trial strategy to avoid 'substantial possibilities of surprise'" (*People v Gonzalez*, 68 NY2d 424, 428 (1986)). In any event, defendant failed to meet his burden of establishing that the victim's companions were knowledgeable about the shooting, inasmuch as they started running from the scene before the shooting occurred (*see id.* at 427-428). Furthermore, the colloquy between the court and the parties establishes that the victim's companions were never identified and thus were neither available to testify nor under the People's control (*see id.* at 428; *see generally People v Savinon*, 100 NY2d 192, 197-201 (2003)).

*People v. Mobley*, 49 A.D.3d at 1345, 2008 N.Y. Slip Op. 02663, at 2.

Respondent argues that Petitioner's claim has been procedurally defaulted as a result of the Appellate Division's reliance upon an adequate and independent ground (New York's contemporaneous objection rule) to deny the claim.  I agree with Respondent, and I also agree that Mobley has demonstrated neither cause nor prejudice, nor that a constitutional error has

resulted in the conviction of an actually innocent person.

Moreover, it is clear from the record that this claim has no merit. "'Whether a missing witness charge should be given lies in the sound discretion of the trial court.'" *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992) (quoting *United States v. Torres*, 845 F.2d 1165, 1170-71 (2d Cir. 1988) (other citations omitted)).  To warrant a missing witness charge under New York law, the party requesting the charge must show that (1) the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case, (2) the witness would naturally be expected to provide non-cumulative testimony favorable to the party who has not called him, and (3) the witness is available to such party. *People v. Gonzalez*, 68 N.Y.2d 424, 427 (N.Y. 1986). Here, as the Appellate Division found, Mobley could not establish several of the necessary elements for obtaining a missing witness charge. First, the "knowledge of a material issue" element was lacking because the two witnesses started running away from the scene before the shooting occurred.[5] Second, the element of "availability to the non-requesting party" was not demonstrated because the identities of the two witness were unknown[6] and thus it cannot be established that the witnesses were under the prosecution's control. Under these circumstances, the Court cannot find that the trial judge abused his discretion in declining to issue a missing

---

[5]     After the victim, George Doran, threw a small bottle of hot sauce at the passenger-side of Petitioner's car, in response to something that Mobley's girlfriend said to him and his two friends, Doran and the two companions observed Petitioner "reaching over in the car". Seeing Mobley "reaching" for something prompted the men to take off running. According to Doran, the two friends Doran testified that his two friends returned to the scene as he was lying on the ground, there was no testimony as to what, if anything, his companions had seen.

[6]     Doran had testified at the felony hearing and in the grand jury naming the two companions variously as "Wayne and Berrel," "Bril and Joe", and as "Joe and Chucky" at trial–but never providing their surnames. It was undisputed that none of these individuals gave written statements to the police or testified at any pre-trial hearings. Officer Dragone testified that all of the witnesses were very uncooperative, telling her to "do her job" and "look for the gray car". The most information she got from them was the name "L.A.", which was cumulative to the victim's testimony. She did not recall speaking  to "Chucky" at all.  Detective Sergeant Dan Figueroa wrote a file memo indicating that the witnesses told him they did not know anything.

witness instruction.  Thus, I cannot conclude there was an error of State law or an error of

Federal constitutional magnitude warranting habeas relief. *See*, *e.g.*, *Reid v. Senkowski*, 961 F.2d

at 377 (rejecting habeas claim, finding that state trial court did not abuse discretion in

determining that missing witnesses were not sufficiently in control of the government to justify

providing a missing witness charge requested by defendant, and thus denial of charge did not

deprive defendant of right to fair trial, where the government introduced evidence of diligent

efforts to locate the witnesses, and such efforts were unsuccessful).

### D.      Ground Four: Verdict Against the Weight of the Credible Evidence

Mobley argued on direct appeal that the verdict was against the weight of the evidence

with respect to the issue of identification, asserting that it was "illogical" for the jury to reject the

testimony of his alibi witnesses in favor of what he described as the "uncorroborated" testimony

of the victim. The Appellate Division rejected this contention, noting that the jury's resolution of

credibility and identification issues was entitled to great weight, and it could not be said that the

jury failed to give the evidence the weight it should have been accorded. *People v. Mobley,* 49

A.D.3d at 1345 (citations omitted).

Mobley's "weight of the evidence" claim derives from New York Criminal Procedure

Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify

a conviction where it determines "that a verdict of conviction resulting in a judgment was, in

whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). Thus,

a "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure

statute, whereas a legal sufficiency claim is based on federal due process principles. *People v.*

*Bleakley*, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (N.Y. 1987). Since a "weight

of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding. *E.g.*, *Ex parte Craig*, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923); *Garrett v. Perlman*, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (same). In keeping with these precedents, I find that Mobley's weight-of-the-evidence claim fails to present a cognizable constitutional question amenable to habeas review.

Mobley, in his reply memorandum of law, requests that the Court construe his *pro se* arguments leniently to raise the strongest possible arguments and to consider his papers as asserting an insufficiency-of-the-evidence claim regarding the identification evidence. Insufficiency-of-the-evidence review is more deferential to the trier-of-fact than weight-of-the-evidence review. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir.1997).  A habeas court will uphold a state criminal conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)); *see*

*also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002) ("[W]e review the evidence in the

light most favorable to the State and the applicant is entitled to habeas corpus relief only if no

rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence

adduced at trial."); *Policano v. Herbert*, 430 F.3d 82, 86 (2d Cir.2005) (" '[I]n a challenge to a

state criminal conviction brought under 28 U.S.C. § 2554[,] . . . the applicant is entitled to habeas

corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of

fact could have found proof of guilt beyond a reasonable doubt.' ") (quoting *Jackson*, 443 U.S. at

324, 99 S.Ct. 2781).

Even when "faced with a record of historical facts that supports conflicting inferences,

[this Court] must presume–even if it does not affirmatively appear in the record–that the trier

of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir.1994). Thus, a reviewing court may not grant relief on

a sufficiency claim unless the record is "so totally devoid of evidentiary support that a due

process issue is raised."  *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir.1994).

A habeas petitioner's contention that a witness' testimony was unworthy of belief is not

reviewable in habeas proceedings since credibility determinations are the province of the jury.

*See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because

"assessments of the weight of the evidence or the credibility of witnesses are for the jury and not

grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these

issues).

Mobley's arguments in his habeas petition boil down to this: his alibi witnesses were

more believable than the victim.  These arguments attacking the witnesses' credibility were

already made to the trier-of-fact, who was in the best position to observe the witnesses' demeanor and assess their veracity. It is beyond cavil that a reviewing court must defer to the trier-of-fact's assessments of witness credibility. *E.g.*, *United States v. Vasquez*, 267 F.3d 79 (2d Cir. 2001) ( "The jury chose to believe the witnesses' testimony despite any inconsistencies. We will defer to the jury's assessment of credibility." ) (citing *United States v. Payton*, 159 F.3d 49, 56 (2d Cir.1998) ("Where there is conflicting testimony at trial, we defer to the jury's resolution of the witnesses' credibility. . . .").

Drawing all reasonable evidentiary inferences in favor of the prosecution, and deferring the trier-of-fact's resolution on the issues of witness credibility, there was more than ample evidence for a rational fact-find to conclude that the prosecution clearly met its burden of proving Petitioner's identity as the shooter beyond a reasonable doubt.

**E.     Ground Five: Ineffective Assistance of Trial Counsel**

Petitioner claims that he was denied the right to effective assistance of trial counsel because counsel, during his opening statement, told the jury that they would hear evidence explaining why the victim would have accused Petitioner of shooting him but later failed to elicit any such evidence, thereby undermining the credibility of the defense.  The major theme of defense counsel's opening statement was that Petitioner was not and could not have been the shooter, and that this would be proven through the testimony of his alibi witnesses. In his conclusion, counsel remarked, "So you see, Bruce [Mobley] could not be the shooter. You'll hear evidence as to why George Doran would say it was Bruce that shot him. But it wasn't Bruce."

Here, the Appellate Division adjudicated Mobley's ineffective assistance claim on the merits. Thus, in order to obtain relief, Mobley must demonstrate that the Appellate Division's

holding amounted to an unreasonable application of *Strickland v Washington*, 466 U.S. 668 (1984), which has been deemed the "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)(1).  The Second Circuit has stated that the level of "unreasonableness" that must be shown under 28 U.S.C. § 2254(d)(1) "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008) 8 (quoting *Overton v. Newton*, 295 F.3d 270, 277 (2d Cir.2002)). As the Circuit further explained in *Eze v. Senkowski*, 321 F.3d at 121, an unreasonable application of Supreme Court precedent means more than that the state court incorrectly applied the precedent; it had to apply the facts in an "objectively unreasonable manner." *Id.* There must be "some increment beyond error is required," although it "need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (internal citations omitted).

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v Washington*, 466 U.S. 668, a defendant must satisfy a two-part test. First, the defendant must demonstrate that counsel's performance "fell below an objective standard of reasonableness" and was so deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 688. Second, the defendant must show that counsel's deficient performance prejudiced him, which requires establishing that but for counsel's errors, a "reasonable probability" exists that the outcome of the trial would have been different. *Id*. at 694. The issue of prejudice need not be addressed, however, if the defendant is unable to demonstrate first that his counsel's performance was inadequate. *See id.* at 697.

The decision as to whether to make an opening statement, and its scope, is a matter of

trial strategy. *See*, *e.g.*, *United States v. Kortright*, No. 99-1225, 205 F.3d 1326 (table), 2000 WL 232291 at *1 (2d Cir. Jan. 25, 2000) (rejecting ineffective counsel claim based on, *inter alia*, "the content of counsel's opening statement," "because displeasure with defense counsel's trial strategy is not sufficient to establish ineffectiveness under the stringent requirements of *Strickland*, ... and because [petitioner] has not shown that trial counsel's assistance was unreasonable under all the circumstances"); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.1987) ("[T]he decision whether to make an opening statement and when to make it is ordinarily a matter of trial tactics and strategy which will not constitute the incompetence basis for a claim of ineffective assistance of counsel."), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1018 (1988).

As noted above, trial counsel commented that the jury would "hear evidence as to why George Doran would say it was Bruce that shot him." Then, during his cross-examination of the victim, defense counsel attempted to establish he was biased against Petitioner because Petitioner had complained to the police about noise emanating from the victim's apartment which resulted in the victim being arrested for marijuana possession:

> Q     There's – from time to time the police were called to come to 78 Gibson, weren't the?
> A     Yes.
> Q     The upstairs apartment, right?
> A     Yes.
> Q     And you knew that Bruce would be the one to call them?
> A     No.
> Q     Several of those calls were about excess noise being made upstairs, right?
> A     Probably.
> Q     There was a lot of noise being made upstairs from time to time, wasn't there?
> A     I don't know.
> Q     Well, did you know that Bruce and his girlfriend had a daughter?

A       No. I know he had a son, though. I only know the son.
Q       Not the daughter?
A       I never seen [sic] no daughter. I never seen no little girl.
Q       About what time would you say the police were called up to the upstairs at
        78 Gibson over the course of–
                The Court:      Put a time frame.
Q       Over the course of a time you knew him to live downstairs.
A       When I was there only twice, police only came there twice.
Q       And you were there when the police came?
A       One time they raided the house. I had got caught up in the raid. Raided the
        upstairs.
Q       That's the only time you got arrested?
A       I got arrested.
Q       Did you get convicted for that?
A       No, I didn't. I got a marijuana violation for that, only a violation.

T.106 (citations to "T.__" refer to pages in the trial transcript).

Defense counsel's summation was brief. He alluded to the "missing witnesses" (Chuck

and Joe or Bril/Berrel and Joe), saying "[t]here were more [eyewitnesses] but you didn't hear

from them." T.272. Defense counsel argued that Doran had plenty of time to think between being

shot and his statement identifying the shooter as "L.A.", pointing out that Doran called his

mother before calling 911. T.272. Defense counsel also attacked Doran's description of the

shooter, saying that Petitioner "no way, stretch of the imagination[,] has a medium build" and

"looks taller than six foot two[.]" T.272. Defense counsel commented, "If Bruce Mobley didn't

shoot George Doran then George Doran is either lying or he's wrong. I think the evidence shows

he's lying. Now, why would he lie? I don't know. We could guess all day long why he would lie,

just like we could guess all day long why Bruce Mobley, when he was stopped almost two weeks

later by the police who knew him as a suspect in the shooting would give a false name. Anybody

in that situation probably would have given a false name. We would be guessing. We can't guess

though." T.273-74.

During her summation, the prosecutor made the following argument:

> Why would a person falsely accuse someone other than the actual shooter? Why would George Doran falsely accuse Bruce Mobley? [Defense counsel] was not obligated to give an opening statement but he chose to do so, and in his opening statement he promised you that he would prove why George Doran would falsely accuse Bruce Mobley as a shooter.

T.284.-85.

Trial counsel objected to this statement: "I'm going to object, Judge. I do [sic] no such thing in my opening statement." T.285. The trial judge then issued the following instruction to the jury: "Ladies and gentlemen, as I told you before, whatever either counsel says during their openings or their closing is not evidence. It's your recollection of the testimony at the trial which is evidence. Summations are comments on what the attorneys, each of them believed was the evidence." T.285.

On direct appeal, the Appellate Division "reject[ed] the contention of defendant that he was deprived of his right to effective assistance of counsel based on the failure of defense counsel to prove that the victim had a motive to lie concerning the identification of the shooter, as 'promised' in his opening statement." The court explained,

> The record establishes that defense counsel attempted to establish on cross-examination that the victim was biased against defendant because of an incident in which defendant complained to the police about noise emanating from the victim's apartment, resulting in the victim's arrest for possessing marihuana. Defense counsel's "'use of an unsuccessful strategy is insufficient to establish ineffective assistance of counsel'" (*People v Knightner*, 11 AD3d 1002, 1005 (2004), *lv denied* 4 NY3d 745 (2004)).

*People v. Mobley*, 49 A.D.3d at 1345.

Reviewing courts must apply a deferential level of scrutiny, particularly with respect to potentially strategic decisions made by counsel. *Strickland* cautions reviewing courts against

-31-

using hindsight in reviewing counsel's performance: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . ., and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S at 689; *see also United States v. Natanel*, 938 F.2d 302, 310 (1st Cir.1991) (cautioning that "[the fact that] counsel's selection of a stratagem may, in retrospect, have proved unsuccessful, or even unwise, is not the issue"). The defendant, as a result, must "overcome the presumption that, under the circumstances, the challenged action '*might be considered sound trial strategy.*'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955) (emphasis supplied); *accord*, *e.g.*, *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005); *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000).

Mobley essentially is asking this Court to conclude that rial counsel's strategy was objectively unreasonable because, according to Mobley, there was nothing to be gained by telling the jury that it would hear evidence of a motive to fabricate. However, the Court must ask whether the Appellate Division's decision unreasonably applied clearly established Supreme Court precedent. Given the Supreme Court's recent pronouncement *Knowles v. Mizrayance*, 129 S. Ct. 1411, 1419 (2009), that it "has never established anything akin to the . . . 'nothing to lose' standard for evaluating *Strickland* claims[,]" which it explained was essentially the same as concluding that there was nothing to be gained by a certain strategy, I cannot find that the Appellate Division's decision violated clearly established Federal law. *See id.* n. 3 ("Although the Court of Appeals implicitly disavowed the 'nothing to lose' standard applied by the District Court and Magistrate Judge, it nevertheless concluded that '[n]o actual tactical advantage was to be gained' by counsel's withdrawal of the insanity defense. Finding that counsel is deficient by

abandoning a defense where there is nothing to gain from that abandonment is equivalent to finding that counsel is deficient by declining to pursue a strategy where there is nothing to lose from pursuit of that strategy.") (alteration in original; internal citations omitted). Here, Mobley's counsel did not abandon the defense of fabrication, although he apparently did not obtain the information he had hoped to obtain (he only was able to elicit that the victim received a violation for marijuana possession after being arrested in a raid that occurred at the apartment upstairs from Mobley's residence). Defense counsel objected to the prosecutor's characterization of his argument as a "promise" and obtained an immediate curative instruction from the trial judge. Thus, I am find that the Appellate Division was not objectively unreasonable in concluding, implicitly, that Mobley had not demonstrated that counsel's performance that "fell below an objective standard of reasonableness" and was so deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.

## V.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2);  *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/  Victor E. Bianchini

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:          April 20, 2011
                Rochester, New York